# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF
# MISSOURI EASTERN DIVISION

| | | |
|---|---|---|
| CHARLES LEWIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:18-CV-00213-NAB |
| | ) | |
| SAINT LOUIS, MISSOURI, CITY OF, | ) | |
| et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter, brought under 42 U.S.C. § 1983 alleging due process violations in connection with Plaintiff Charles Lewis's ("Plaintiff") prolonged incarceration after he was legally entitled to release, as well as a Missouri common law claim for false imprisonment, is before the Court on the motion of Defendant Kimberly Gardner ("Gardner") to dismiss Plaintiff's complaint for failure to state a claim on which relief may be granted, and on the basis of qualified or absolute immunity. (Doc. 13). For the reasons set forth below, the motion will be denied.

## BACKGROUND

Plaintiff's claims arise out of his eight-day detention at the St. Louis City Medium Security Institution ("MSI") and the St. Louis City Justice Center ("Justice Center") after criminal charges against him were dismissed, and out of the unsanitary conditions of his confinement, which lasted for approximately twelve months in total.

Plaintiff names as Defendants the City of St. Louis (the "City") and the following individuals, solely in their individual capacities: Vernon Betts, the Sheriff of the City; Jeff

Carson, Superintendent of MSI; Charlene Deeken, the Director of the City's Department of Public Safety; Kimberly Gardner, the City's Circuit Attorney; Dale Glass, the Commissioner of the City's Division of Corrections; and five "unknown" defendants.

Plaintiff alleges that he was arrested in May 2016, and charged with two counts of making terroristic threats. (Doc. 1 at 4). Because Plaintiff could not afford to post bond, he was detained at MSI pending trial. Plaintiff was tried on criminal charges in the City's circuit court in March 2017. *Id*. At trial, Plaintiff was acquitted of one count of making terroristic threats, with ten jurors in favor of acquittal and two in favor of conviction. After trial, Plaintiff was returned to MSI. *Id*. at 4-5.

On May 15, 2017, Defendant Gardner and an "unknown" Assistant Circuit Attorney of the Circuit Attorney's office filed a Memorandum of Nolle Prosequi, which the state court accepted and which dismissed the charges against Plaintiff. *Id.* at 5. After May 15, 2017, Plaintiff continued to be held in MSI. *Id*. On May 20, 2017, Plaintiff's public defender was notified that the charges against Plaintiff had been dismissed. *Id*. On May 22, 2017, his public defender noticed that Plaintiff's name was still on the MSI jail roster, and she verified with the St. Louis City Sheriff's Office that Plaintiff was being held because Plaintiff was subject to a hold issued by Jefferson County, Missouri. *Id*. at 5-6. Plaintiff's public defender then called the Jefferson County court and was informed that no such hold had been issued. *Id*. at 6.

Sometime after May 22, 2017, Plaintiff was transferred from MSI to the Justice Center. *Id*. Plaintiff alleges that he repeatedly informed various officers that he should be released. *Id.* Upon being detained at the Justice Center, Plaintiff asked two "unknown" Lieutenants why he was being held, and was informed that he was subject to a hold issued by Jefferson County. *Id*. Plaintiff told them he was not subject to any such hold. *Id*. Plaintiff was eventually released "on or after May 23, 2017." *Id*. at 7.

Plaintiff alleges that for the duration of his stay at MSI he was subjected to unconstitutionally poor conditions of confinement. *Id*. at 7-8. He asserts that throughout his confinement he endured leaking sewage, collapsing ceilings, extreme hot and cold temperatures, visible mold, outbreaks of scabies and lice, infestations of mice, rats, snakes, spiders and raccoons, and exposed asbestos. *Id*.

Plaintiff alleges that Defendant Gardner has a responsibility to communicate the dismissal of criminal charges to those with direct custody over people incarcerated by the City to ensure the immediate release of innocent citizens. *Id*. at 8. Plaintiff also alleges that Defendant has the responsibility to set policies, direct staff training, and establish patterns or practices of the City of St. Louis with respect to the incarceration and release of innocent citizens and people who are subject to release because they have completed their sentences, and that Defendant knowingly failed in these responsibilities, thus causing Plaintiff to be wrongfully incarcerated and wrongfully punished. *Id*. at 9.

Plaintiff further alleges that, aside from him, other people residing in corrections institutions in St. Louis City were unlawfully detained after charges had been dropped against them, and that the Office of the Missouri State Public Defender System informed all Defendants that this was the case. *Id*. at 9.

Finally, Plaintiff alleges that Defendants' actions caused him physical harm and severe emotional distress. *Id*. at 12.

Plaintiff's complaint contains 10 counts: Fourth Amendment, due process, and state-law false imprisonment claims, arising out of his eight-day wrongful incarceration and asserted against Betts, Carson, Deeken, Gardner, Glass, and certain of the unknown Defendants (Counts I, II, and IV); a due process claim arising out of his conditions of confinement and asserted

against Carson, Deeken, and Glass (Count III); supervisory claims asserted against all Defendants for failure to establish policies, failure to properly train staff, and establishing a pattern or practice with respect to wrongful incarceration of citizens (Counts V, VI, and VII); and supervisory claims against the City of St. Louis, Betts, Carson, Deeken, Glass, and an "unknown" Sheriff's employee with respect to safe and sanitary conditions of confinement for pretrial detainees (Counts VIII, IX, and X). In Counts I, II, and IV, Plaintiff alleges that the named Defendants "knew or should have known that Plaintiff was wrongfully imprisoned" and that these Defendants were "directly responsible for depriving Plaintiff of his freedom." *Id.* at 13-14. As the claims related to conditions of confinement (Counts III, VIII, IX, and X) are not directed against Defendant Gardner, the Court will not address those claims in this Order.

Plaintiff seeks compensatory and punitive damages, attorney's fees and costs.

## ARGUMENTS OF THE PARTIES

Defendant Gardner argues that Plaintiff fails to state a claim against her because Plaintiff has failed to allege that she was personally involved in violating his rights. Gardner further argues that Plaintiff's federal claims are barred by qualified immunity, and that she is entitled to absolute immunity for all claims.

In response, Plaintiff argues that he has sufficiently pled the personal involvement of Defendant Gardner in each count directed toward her. He states that Defendant "knew there was a problem, failed to do anything about it despite her authority and responsibility within the criminal justice system, and allowed Plaintiff and others like him to have their constitutional rights violated." (Doc. 14 at 4). Plaintiff also contends that Gardner is not entitled to qualified immunity because she violated his clearly established constitutional rights, and that Gardner is not entitled to absolute immunity because her relevant actions were administrative rather than

prosecutorial in nature.

In reply, Defendant reiterates her arguments in support of dismissal and further contends that Plaintiff's allegations of constitutional violations are merely conclusory.

## **DISCUSSION**

For a plaintiff to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. The reviewing court accepts the plaintiff's factual allegations as true and draws all reasonable inferences in favor of the nonmoving party. *Torti v. Hoag*, 868 F.3d 666, 671 (8th Cir. 2017). But "[c]ourts are not bound to accept as true a legal conclusion couched as a factual allegation, and factual allegations must be enough to raise a right to relief above the speculative level." *Id.*

In civil rights actions, a complaint should be liberally construed when determining whether it has stated a cause of action sufficient to survive a motion to dismiss. *See Frey v. City of Herculaneum*, 44 F.3d 667, 671 (8th Cir. 1995). Moreover, the reviewing court must accept the plaintiff's factual allegations as true and construe them in the plaintiff's favor, though it is not required to accept the legal conclusions the plaintiff draws from the facts alleged. *Iqbal*, 556 U.S. at 678; *Retro Television Network, Inc. v. Luken Commc'ns, LLC*, 696 F.3d 766, 768-69 (8th Cir. 2012). A court must "draw on its judicial experience and common sense," and consider the plausibility of the plaintiff's claim as a whole, not the plausibility of each individual allegation. *Zoltek Corp. v. Structural Polymer Grp.*, 592 F.3d 893, 896 n.4 (8th Cir. 2010) (quoting *Iqbal*,

556 U.S. at 679); *see also Braden v. Walmart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (noting "the complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible"). A motion to dismiss should not be granted merely because a complaint does not state with precision every element of the offense necessary for recovery. *Roberts v. Walmart Stores, Inc.*, 736 F.Supp. 1527, 1528 (E.D.Mo. 1990). "A complaint is sufficient if it contains allegations from which an inference can be drawn that evidence on these material points will be introduced at trial." *Id*.

To state a claim under § 1983, a plaintiff must allege (1) that the defendant acted under color of state law; and (2) that the alleged conduct deprived the plaintiff of a constitutionally protected federal right. *Schmidt v. City of Bella Villa*, 557 F.3d 564, 571 (8th Cir. 2009).

> The doctrine of qualified immunity shields officials from civil liability so long as their conduct does not violate clearly established . . . constitutional rights of which a reasonable person would have known. The dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. The qualified immunity analysis thus is limited to the facts that were knowable to the defendant officers at the time they engaged in the conduct in question. Facts an officer learns after the incident ends—whether those facts would support granting immunity or denying it— are not relevant.

*Hernandez v. Mesa*, 137 S. Ct. 2003, 2007 (2017) (citations omitted). To determine whether a defendant is entitled to qualified immunity, the Court must "conduct a two-step inquiry: (1) whether the facts, viewed in the light most favorable to the plaintiff, demonstrate the deprivation of a constitutional or statutory right; and (2) whether the right was clearly established at the time of the deprivation." *Solomon v. Petray*, 795 F.3d 777, 786 (8th Cir. 2015).

**Absolute Immunity for Prosecutors**

The common law grants absolute immunity to judges and certain judicial officers, as well as prosecutors, acting within the scope of their judicial or prosecutorial duties. *Van de*

*Kamp v. Goldstein*, 555 U.S. 335, 341 (2009). Considerations of public policy underlie this type of immunity, including a "concern that harassment by unfounded litigation" could cause a "deflection of the [officer's] energies from his public duties and also lead the [officer] to shade his decisions instead of exercising the independence of judgment required by his public trust." *Id.*

Thus, the Supreme Court has held that "absolute immunity applies when a prosecutor prepares to initiate a judicial proceeding or appears in court to present evidence in support of a search warrant application." *Id.* at 343. But "absolute immunity may not apply when a prosecutor is not acting as an officer of the court, but is instead engaged in, say, investigative or administrative tasks." *Id.* at 342. "To decide whether absolute immunity attaches to a particular prosecutorial activity, one must take account of [the] functional considerations" of the activity, including whether the activity is "connected with the prosecutor's basic trial advocacy duties." *Id.* at 342, 346.

Several courts have held that a prosecutor's act of "omitting to see to the release" of an individual when the basis for detention no longer exists is an administrative task not entitled to immunity. *See, e.g.*, *Odd v. Malone*, 538 F.3d 202, 215 (3d Cir. 2008) (holding that a prosecutor's act of failing to notify relevant authorities that an underlying action for which a detainee was being held as a material witness had been dismissed, was an administrative act for which the prosecutor was not entitled to absolute immunity); *Schneyder v. Smith*, 653 F.3d 313, 334 (3d Cir. 2011) (holding that *Van de Kamp* did not alter the result in *Odd* because the "duty of disclosure [of a change in the circumstances surrounding the detention of a material witness] was neither discretionary nor advocative, but was instead a purely administrative act not entitled to the shield of immunity"); *Pinaud v. Cty. of Suffolk*, 52 F.3d 1139, 1151–52 (2d

Cir. 1995) ("Keeping a person in state custody *after* the termination of all charges against him has nothing to do with conducting a prosecution for the state. . . . [T]he handling of a prisoner after the complete conclusion of all criminal charges is not a prosecutorial task but rather an administrative one . . . ."). The Court agrees with these authorities and holds that Gardner is not entitled to absolute immunity for her alleged actions in failing to inform the relevant authorities of the dismissal of the charges against Plaintiff.

**Personal Involvement**

"Respondeat superior is not applicable to § 1983 claims." *Ouzts v. Cummins*, 825 F.2d 1276, 1277 (8th Cir. 1987) (per curiam). Thus, "a warden's general responsibility for supervising the operations of a prison is insufficient to establish personal involvement," which is required to state a § 1983 claim against an individual defendant. *Id.* However, the warden "might be liable if [he] had made policy decisions resulting in the alleged unconstitutional conditions." *Id.*

Under § 1983, a supervisor may be held liable for constitutional violations caused by his or her "failure to properly supervise and train the offending employee." *Jackson v. Nixon*, 747 F.3d 537, 543 (8th Cir. 2014).

> Individual liability under § 1983 requires a causal link to, and direct responsibility for, the alleged deprivation of rights . . . . For a supervising officer to be liable under § 1983 for the constitutional violation of a subordinate based on a failure to supervise . . . the supervisor must have demonstrated deliberate indifference or tacit authorization of the offensive acts.

*Doe HM v. City of Creve Coeur, Mo.*, 666 F. Supp. 2d 988, 997 (E.D. Mo. 2009) citations omitted). "Proof of actual knowledge of constitutional violations is not . . . an absolute prerequisite for imposing supervisory liability . . . . [However, a] single incident, or a series of isolated incidents, usually provides an insufficient basis upon which to assign supervisory

liability." *Howard v. Adkison*, 887 F.2d 134, 138 (8th Cir. 1989).

Likewise, under Missouri law (for the purpose of the false imprisonment claim), "public officers are not responsible for acts of subordinate officials, if such subordinates are themselves employees of the government, where there is no negligence on the part of such public officials in employing them, unless the superior officer has directed or encouraged or ratified such acts, or has personally co-operated therein." *State ex rel. Green v. Neill*, 127 S.W.3d 677, 679 (Mo. 2004).

The viability of Plaintiff's complaint turns, then, on whether Gardner had actual or constructive notice of, and was deliberately indifferent to or authorized the asserted violations. This is a close question. However, with respect to Plaintiff's wrongful incarceration and related supervisory claims (Counts I, II, IV, V, VI, and VII), a reasonable inference can be drawn based on the limited record at this early stage of the proceedings that Defendant Gardner was on notice of and deliberately indifferent to or authorized the violations alleged. *See, e.g.*, *Davis v. Hall*, 375 F.3d 703, 716 (8th Cir. 2004) (affirming the denial of summary judgment on § 1983 claims for prolonged incarceration as to those defendants who "were on notice that [the wrongfully detained person] was entitled to be released").

**Qualified Immunity**

Defendant also asserts that Plaintiff's § 1983 claim is barred by the doctrine of qualified immunity. The doctrine of qualified immunity exists to "protect public officers from liability for the exercise of discretion in performing a public duty; it reflects a decision that the public is better served by public officials who will not be deterred by fear of liability from executing the office with an independent and decisive judgment." *In re Scott County Master Docket*, 672 F.Supp. 1152, 1172 (D.Minn. 1987). "Qualified immunity may protect government officials

from liability under 42 U.S.C. § 1983, but not if their conduct violated clearly established statutory or constitutional rights of which a reasonable person would have known." *Nelson v. Corr. Med. Servs.,* 583 F.3d 522, 527 (8th Cir. 2009) (citing *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)).

Defendant's qualified immunity argument is based on the contention that she is not alleged to have been personally involved in any violation of Plaintiff's rights. Based on the limited record at this stage, and as discussed *supra*, the Court disagrees. Accordingly, Gardner is not entitled to qualified immunity, as it was clearly established at the time of the events in this case that an individual may not be detained after charges against him have been dismissed. *See, e.g.*, *Davis*, 375 F.3d at 712 (wrongful, prolonged incarceration).

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that the motion to dismiss filed by Defendant Kimberly Gardner is **DENIED.** (Doc. 13).

_____
NANNETTE A. BAKER
UNITED STATES MAGISTRATE JUDGE

Dated this 3rd day of July, 2018.